UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

GLENN C.,[1]

    **Plaintiff,**

v.

LELAND DUDEK,[2]
**Acting Commissioner of Social Security,**

    **Defendant.**

Case No. 2:22-cv-7410
Magistrate Judge Norah McCann King

## OPINION AND ORDER

This matter comes before the Court pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), regarding the applications of Plaintiff Glenn C. for Disability Insurance Benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq.*, and for Supplemental Security Income under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381 *et seq*. Plaintiff appeals from the final decision denying those applications. After careful consideration of the entire record, including the entire administrative record, the Court decides this matter pursuant to Rule 78(b) of the Federal Rules of Civil Procedure. For the reasons that follow, the Court the Court reverses the Acting Commissioner's decision and remands the matter for further proceedings.

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to plaintiffs in such cases by only their first names and last initials. *See also* D.N.J. Standing Order 2021-10.

[2] Leland Dudek, the current Acting Commissioner of Social Security, is substituted as Defendant in his official capacity. *See* Fed. R. Civ. P. 25(d).

I.  **PROCEDURAL HISTORY**

On March 17, 2020, Plaintiff filed his applications for disability insurance benefits and supplemental security income, alleging that he has been disabled since March 24, 2018. R. 107, 123–25, 136, 274–78, 293–315.[3] The applications were denied initially and upon reconsideration. R. 149–74. Plaintiff sought a *de novo* hearing before an administrative law judge ("ALJ"). R. 202–03. ALJ Kevin Kenneally held a hearing on July 28, 2021, at which Plaintiff, who was represented by counsel, testified, as did a vocational expert. R. 33–75. In a decision dated August 31, 2021, the ALJ concluded that Plaintiff was not disabled within the meaning of the Social Security Act from March 24, 2018, Plaintiff's alleged disability onset date, through the date of that decision. R. 18–26. That decision became final when the Appeals Council declined review on November 10, 2022. R. 1–7. Plaintiff timely filed this appeal pursuant to 42 U.S.C. § 405(g). ECF No. 1. On January 6, 2023, Plaintiff consented to disposition of the matter by a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure. ECF No. 2.[4] On February 24, 2023, the case was reassigned to the undersigned. ECF No. 5. The matter is ripe for disposition.

II.  **LEGAL STANDARD**

    A.  **Standard of Review**

In reviewing applications for Social Security disability benefits, this Court has the authority to conduct a plenary review of legal issues decided by the ALJ. *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000). In contrast, the Court reviews the ALJ's factual findings to

---

[3] Plaintiff's prior application for benefits was unsuccessful. R. 79–88, R. 95–101.

[4] The Commissioner has provided general consent to Magistrate Judge jurisdiction in cases seeking review of the Commissioner's decision. *See* Standing Order In re: Social Security Pilot Project (D.N.J. Apr. 2, 2018).

determine if they are supported by substantial evidence. *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000); *see also* 42 U.S.C. §§ 405(g), 1383(c)(3). The United States Supreme Court has explained this standard as follows:

> Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains sufficien[t] evidence to support the agency's factual determinations. And whatever the meaning of substantial in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence, this Court has said, is more than a mere scintilla. It means – and means only – such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

*Biestek v. Berryhill*, 587 U.S. 97, 102–03 (2019) (internal citations and quotation marks omitted); *see also Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (citation and internal quotations omitted); *Bailey v. Comm'r of Soc. Sec.*, 354 F. App'x 613, 616 (3d Cir. 2009) (citations and quotations omitted); *K.K. ex rel. K.S. v. Comm'r of Soc. Sec.*, No. 17-2309, 2018 WL 1509091, at *4 (D.N.J. Mar. 27, 2018).

The substantial evidence standard is a deferential standard, and the ALJ's decision cannot be set aside merely because the Court "acting de novo might have reached a different conclusion." *Hunter Douglas, Inc. v. NLRB*, 804 F.2d 808, 812 (3d Cir. 1986); *see, e.g., Fargnoli v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001) ("Where the ALJ's findings of fact are supported by substantial evidence, we are bound by those findings, even if we would have decided the factual inquiry differently.") (citing *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999)); *K.K.*, 2018 WL 1509091, at *4 ("'[T]he district court ... is [not] empowered to weigh the evidence or substitute its conclusions for those of the fact-finder.'") (quoting *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992)).

Nevertheless, the Third Circuit cautions that this standard of review is not "a talismanic or self-executing formula for adjudication." *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983)

("The search for substantial evidence is thus a qualitative exercise without which our review of social security disability cases ceases to be merely deferential and becomes instead a sham."); *see Coleman v. Comm'r of Soc. Sec.*, No. 15-6484, 2016 WL 4212102, at *3 (D.N.J. Aug. 9, 2016). The Court has a duty to "review the evidence in its totality" and "take into account whatever in the record fairly detracts from its weight." *K.K.*, 2018 WL 1509091, at *4 (quoting *Schonewolf v. Callahan*, 972 F. Supp. 277, 284 (D.N.J. 1997) (citations and quotations omitted)); *see Cotter v. Harris*, 642 F.2d 700, 706 (3d Cir. 1981) (stating that substantial evidence exists only "in relationship to all the other evidence in the record"). Evidence is not substantial if "it is overwhelmed by other evidence," "really constitutes not evidence but mere conclusion," or "ignores, or fails to resolve, a conflict created by countervailing evidence." *Wallace v. Sec'y of Health & Human Servs.*, 722 F.2d 1150, 1153 (3d Cir. 1983) (citing *Kent*, 710 F.2d at 114); *see K.K.*, 2018 WL 1509091, at *4. The ALJ's decision thus must be set aside if it "did not take into account the entire record or failed to resolve an evidentiary conflict." *Schonewolf*, 972 F. Supp. at 284-85 (citing *Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978)).

Although an ALJ is not required "to use particular language or adhere to a particular format in conducting [the] analysis," the decision must contain "sufficient development of the record and explanation of findings to permit meaningful review." *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004) (citing *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 119 (3d Cir. 2000)); *see K.K.*, 2018 WL 1509091, at *4. The Court "need[s] from the ALJ not only an expression of the evidence s/he considered which supports the result, but also some indication of the evidence which was rejected." *Cotter*, 642 F.2d at 705-06; *see Burnett*, 220 F.3d at 121 ("Although the ALJ may weigh the credibility of the evidence, [s/]he must give some indication of the evidence which [s/]he rejects and [the] reason(s) for discounting such evidence.") (citing

*Plummer v. Apfel*, 186 F.3d 422, 429 (3d. Cir. 1999)). "[T]he ALJ is not required to supply a comprehensive explanation for the rejection of evidence; in most cases, a sentence or short paragraph would probably suffice." *Cotter v. Harris*, 650 F.2d 481, 482 (3d Cir. 1981). Absent such articulation, the Court "cannot tell if significant probative evidence was not credited or simply ignored." *Id.* at 705. As the Third Circuit explains:

> Unless the [ALJ] has analyzed all evidence and has sufficiently explained the weight [s/]he has given to obviously probative exhibits, to say that [the] decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.

*Gober*, 574 F.2d at 776; *see Schonewolf*, 972 F. Supp. at 284-85.

Following review of the entire record on appeal from a denial of benefits, the Court can enter "a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). Remand is appropriate if the record is incomplete or if the ALJ's decision lacks adequate reasoning or contains illogical or contradictory findings. *See Burnett*, 220 F.3d at 119-20; *Podedworny v. Harris*, 745 F.2d 210, 221-22 (3d Cir. 1984). Remand is also appropriate if the ALJ's findings are not the product of a complete review which "explicitly weigh[s] all relevant, probative and available evidence" in the record. *Adorno v. Shalala*, 40 F.3d 43, 48 (3d Cir. 1994) (internal quotation marks omitted); *see A.B. on Behalf of Y.F. v. Colvin*, 166 F. Supp.3d 512, 518 (D.N.J. 2016). A decision to "award benefits should be made only when the administrative record of the case has been fully developed and when substantial evidence on the record as a whole indicates that the claimant is disabled and entitled to benefits." *Podedworny*, 745 F.2d at 221-22 (citation and quotation omitted); *see A.B.*, 166 F. Supp.3d at 518.

5

B.     **Sequential Evaluation Process**

The Social Security Act establishes a five-step sequential evaluation process for determining whether a plaintiff is disabled within the meaning of the statute. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). "The claimant bears the burden of proof at steps one through four, and the Commissioner bears the burden of proof at step five." *Smith v. Comm'r of Soc. Sec.*, 631 F.3d 632, 634 (3d Cir. 2010) (citing *Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 92 (3d Cir. 2007)).

At step one, the ALJ determines whether the plaintiff is currently engaged in substantial gainful activity. 20 C.F.R. §§ 404.1520(b), 416.920(b). If so, then the inquiry ends because the plaintiff is not disabled.

At step two, the ALJ decides whether the plaintiff has a "severe impairment" or combination of impairments that "significantly limits [the plaintiff's] physical or mental ability to do basic work activities[.]" 20 C.F.R. §§ 404.1520(c), 416.920(c). If the plaintiff does not have a severe impairment or combination of impairments, then the inquiry ends because the plaintiff is not disabled. Otherwise, the ALJ proceeds to step three.

At step three, the ALJ decides whether the plaintiff's impairment or combination of impairments "meets" or "medically equals" the severity of an impairment in the Listing of Impairments ("Listing") found at 20 C.F.R. § 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(d), 416.920(d). If so, then the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least 12 months. *Id.* at §§ 404.1509, 416.909. Otherwise, the ALJ proceeds to step four.

At step four, the ALJ must determine the plaintiff's residual functional capacity ("RFC") and determine whether the plaintiff can perform past relevant work. 20 C.F.R. §§ 404.1520(e),

(f), 416.920(e), (f). If the plaintiff can perform past relevant work, then the inquiry ends because the plaintiff is not disabled. Otherwise, the ALJ proceeds to the final step.

At step five, the ALJ must decide whether the plaintiff, considering the plaintiff's RFC, age, education, and work experience, can perform other jobs that exist in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(g), 416.920(g). If the ALJ determines that the plaintiff can do so, then the plaintiff is not disabled. Otherwise, the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least twelve months.

### III. ALJ DECISION AND APPELLATE ISSUES

Plaintiff met the insured status requirements of the Social Security Act through December 31, 2018. R. 20. He was 57 years old at the time of the administrative hearing on July 28, 2021. R. 22. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity between March 24, 2018, his alleged disability onset date, and the date of the decision. R. 20.

At step two, the ALJ found that Plaintiff's cerebral vascular incident ("CVA") with right upper extremity impairment, bilateral osteoarthritis of the knees, and degenerative joint disease of the right shoulder were severe impairments. R. 21.

At step three, the ALJ found that Plaintiff did not suffer an impairment or combination of impairments that met or medically equaled the severity of any Listing. R. 21–22.

At step four, the ALJ found that Plaintiff had the RFC to perform light work subject to various additional limitations. R. 22–25. Relying on the testimony of the vocational expert, the ALJ also found that this RFC would permit the performance of Plaintiff's past relevant work (a composite job) as a stocker, an unloader, and a stocker, receiving supervisor. R. 25.

At step five and again relying on the testimony of the vocational expert, the ALJ found

that a significant number of jobs, *i. e.,* jobs as a stocker, receiving supervisor, existed in the national economy and could be performed by Plaintiff despite his lessened capacity. *Id*. The ALJ therefore concluded that Plaintiff was not disabled within the meaning of the Social Security Act from March 24, 2018, his alleged disability onset date, through the date of the decision. R. 25–26.

Plaintiff disagrees with the ALJ's findings at steps four and five and asks that the decision be reversed and remanded with directions for the granting of benefits or, alternatively, for further proceedings. *Plaintiff's Brief,* ECF No. 11; *Plaintiff's Reply Brief*, ECF No. 16. The Acting Commissioner takes the position that his decision should be affirmed in its entirety because the ALJ's decision correctly applied the governing legal standards, reflected consideration of the entire record, and was supported by sufficient explanation and substantial evidence. *Defendant's Brief*, ECF No. 15.

IV.     **DISCUSSION**

Plaintiff raises a number of challenges, including, *inter alia*, that the Commissioner failed to carry his burden, at step five of the sequential evaluation process, to establish that there is other work that exists in significant numbers in the national economy that Plaintiff could perform. *Plaintiff's Brief*, ECF No. 11, pp. 16–21; *Plaintiff's Reply Brief*, ECF No. 16, pp. 1–3. Plaintiff specifically argues that the ALJ failed to identify the transferable skills required to perform the work upon which the ALJ relied in concluding that Plaintiff was not disabled. *Id*. (citing, *inter alia*, SSR 82-41, 1982 WL 31389). According to Plaintiff, the ALJ's error in this regard is not harmless. For the reasons that follow, the Court agrees that this issue requires remand.

At step five, an ALJ must decide whether the claimant, considering the claimant's RFC and vocational profile, can perform other jobs that exist in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(g), 416.920(g). Unlike at the first four steps of the sequential evaluation, the Commissioner bears the burden of proof at step five. *Hess v. Comm'r Soc. Sec.*, 931 F.3d 198, 201 (3d Cir. 2019); *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 205 (3d Cir. 2008) (citing *Rutherford v. Barnhart*, 399 F.3d 546, 551 (3d Cir. 2005)).

Claims that require an ALJ to consider "an applicant's ability to adjust to other work are addressed in the last step of the sequential evaluation process[.]" SSR 82-41, 1982 WL 31389, at *1; *see also Newell v. Comm'r of Soc. Sec.*, 347 F.3d 541, 546 n.4 (3d Cir. 2003) (stating that Social Security rulings "are binding on all components of the" Social Security Administration"); *Mendes v. Barnhart*, 105 F. App'x 347, 350 n.2 (3d Cir. 2004) (same). The transferability of skills "is an issue only when an individual's impairment(s), though severe, does not meet or equal" a listed impairment but prevents "the performance of past relevant work . . . , and that work has been determined to be skilled or semiskilled." *Id*. "A skill is knowledge of a work activity which requires the exercise of significant judgment that goes beyond the carrying out of simple job duties and is acquired through performance of an occupation which is above the unskilled level (requires more than 30 days to learn)." *Id*. at *2 (explaining further that a skill "is practical and familiar knowledge of the principles and processes of an art, science or trade, combined with the ability to apply them in practice in a proper and approved manner"). "Transferability means applying work skills which a person has demonstrated in vocationally relevant past jobs to meet the requirements of other skilled or semiskilled jobs." *Id*. It follows that "transferable skills" are "skills that can be used in other jobs, when the skilled or semi-skilled work activities [that a claimant] did in past work can be used to meet the requirements of

9

skilled or semi-skilled work activities of other jobs or kinds of work." 20 C.F.R. §§ 404.1568(d)(1), 416.968(d)(1). When considering whether work exists in the national economy in significant numbers, Social Security regulations authorize an ALJ to use a vocational expert to determine whether a claimant has transferable work skills from past relevant work. *See* 20 C.F.R. §§ 404.1566(e) ("If the issue in determining whether [a claimant] is disabled is whether [a claimant's] work skills can be used in other work and the specific occupations in which they can be used . . . [an ALJ] may use the services of a vocational expert."), 416.966(e) (same). "When a finding is made that a claimant has transferable skills: (1) the acquired work skills must be identified, (2) the specific occupations to which the acquired work skills are transferable must be cited, and (3) evidence that these specific skilled or semi-skilled jobs exist in significant numbers in the national economy should be included." *Gaddis v. Comm'r of Soc. Sec.*, 417 F. App'x 106, 107–08 (3d Cir. 2011) (citing SSR 82-41)).

In the present case, the ALJ determined that Plaintiff was unable to perform his past relevant work as "as a stocker, 299.367-014, heavy, SVP 4, an unloader, 929.687-030, heavy, SVP 3, and a stocker receiving supervisor, 222.137-030, light, SVP 6 (composite job)." R. 25. The ALJ went on to find that Plaintiff "has transferable skills from his past work in shipping and receiving and can perform the job of a stocker, receiving supervisor, which does not require the performance of work-related activities precluded by" his RFC. *Id*. The ALJ further explained this finding, as follows:

> Even though his past work was a composite job, the vocational expert testified the claimant acquired skills in shipping and receiving. Therefore, the vocational expert testified that the claimant's skills transfer to the job of stocker receiving supervisor, DOT # 222.137-030, classified as light with an SVP 6, where 16,572 positions exist within the national economy.

*Id*.

The parties disagree on whether the hearing testimony provides substantial support for the ALJ's finding in this regard. *Plaintiff's Brief*, ECF No. 11, pp. 16–21; *Defendant's Brief*, ECF No. 15, pp. 7–11; *Plaintiff's Reply Brief*, ECF No. 16, pp. 1–3. Plaintiff testified regarding his past relevant work experience:

> Q Now as a shipping manager –-
>
> A Um-hum.
>
> Q -- how much were you -- it looks like you started as a shipping -- when did you -- what year did you start as a shipping manager?
>
> A Probably in 2000.
>
> Q Okay. So you were a shipping manager from 2000 until when you stopped working -- until you were laid off, right, . . . in --
>
> A Yes.
>
> Q -- 2013?
>
> A Yes.
>
> Q And -- and was that a job where you --
>
> A It was physical work.
>
> Q It was physical work, okay.
>
> A Yes.
>
> Q How many people did you supervise?
>
> A Maybe six.
>
> Q Okay. But you were also doing the physical work that they --
>
> A Yes.
>
> Q -- were doing?
>
> A Yes.

> Q So you were just their supervisor. Did you have to like complete reports and --
>
> A Yes, I did all the paperwork. Mostly that would be done in the mornings.
>
> Q Okay.
>
> A And the afternoons would be loading and unloading trucks, unloading trucks --
>
> Q Okay.
>
> A -- wherever they needed help at.
>
> Q All right, okay got it. What percentage of the day did you say you were loading and unloading trucks versus doing all the paperwork?
>
> A I would probably say six hours doing the labor --
>
> Q Okay.
>
> A -- and two hours paperwork.
>
> Q All right. All right and those -- what you were unloading and loading that was up to 100 pounds?
>
> A Yes. . . .
>
> Q Okay, I just wanted to point out at the job you were operating machinery like forklift, jack pallets?
>
> A Yes.

R. 43–45. Reponding to examination by the ALJ, the vocational expert testified that Plaintiff's past relevant work was a composite job composed of three jobs, which she identified as follows:

> ALJ: All right. So Ms. Cogliano this might be a composite job here just based on his testimony. I don't know if you need any more information from him, or maybe there is one job title that kind of encompasses everything.
>
> VE: Well there's really three unless -- because he unloaded the trucks and then he did stocking and then he supervised the other workers, managed them.
>
> ALJ: So that would be sort of correct, right, Mr. [ ], what you did? You unloaded, you stocked and then you also did supervision and you processed the orders, right?
>
> CLMT: Correct.

> BY ADMINISTRATIVE LAW JUDGE:
>
> Q Yes.
>
> A Okay. So the first one would be stocker DOT[5] 299.367-014, heavy exertion level, SVP 4, semiskilled, and he lifted up to 100 pounds, so that would put it at the heavy level. Unloader DOT 929.687-030, heavy exertion level, SVP 3, semiskilled, and he performed it at the heavy level. The other job, the stockroom manager, there is no DOT for that but there is a stocker, receiving supervisor.
>
> Q Okay.
>
> A And that is DOT 222.137-030. According to the DOT it's light with an SVP of 6, skilled, but the claimant performed it at the heavy level.
>
> Q Okay, got it. All right so it sounds like he did all three of these aspects of one job, right Ms. Cogliano?
>
> A Correct, yes, correct Your Honor.

R. 65–66. The ALJ then posed a hypothetical question to the vocational expert that assumed a claimant with Plaintiff's vocational profile ("57 year old high school graduate") and the RFC found by the ALJ. R. 22, 66–67. The ALJ went on to question the vocational expert regarding Plaintiff's ability to perform his past relevant composite work and whether Plaintiff had any transferable skills:

> Q Okay. So, Ms. Cogliano, would I be correct in concluding that such a hypothetical individual could not perform the claimant's composite job which consisted of a stocker, unloader and a stocker, receiving supervisor, right?
>
> A Correct Your Honor.
>
> Q Okay. Would there be any skills from the claimant's past work that would transfer to jobs with the limitations in hypothetical #1? I guess I'm really -- what I am specifically focusing on is, of course, one aspect of the composite work was as a stocker, receiving supervisor, right?

---

[5] The DOT is a "publication of the United States Department of Labor that contains descriptions of the requirements for thousands of jobs that exist in the national economy," and which ALJs generally consult to determine whether there are any jobs that a claimant can perform. *Burns v. Barnhart*, 312 F.3d 113, 119 (3d Cir. 2002).

> A Correct.
>
> Q So there would be transferable skills from that. Would there be transferrable skills from that job to the –
>
> A Well –
>
> Q -- limitations in –
>
> A -- he could do the shipping and receiving supervisor component of the job.
>
> Q Okay. So in other words any skills that he acquired from that stocker, receiving supervisor position would be transferrable based on the hypothetical limitations. And, of course, then one of the jobs would be as a stocker, receiving supervisor, right?
>
> A Correct, correct.
>
> Q Okay.
>
> A As it's generally performed in the national economy.
>
> Q That's right because he -- he actually performed it at light.
>
> A Right.
>
> Q Okay.
>
> A No he actually performed it heavy.
>
> Q Heavy, sorry about that.
>
> A Yes.

R. 67–68. According to the vocational expert, there were 16,572 jobs of stocker, receiving supervisor in the national economy. R. 70.

Plaintiff argues that the ALJ failed to comply with the requirements of SSR 82-41 because he failed to address the specific transferable skills that Plaintiff acquired in his past relevant work. *Plaintiff's Brief*, ECF No. 11, pp. 17–20; *Plaintiff's Reply Brief*, ECF No. 16, pp. 1–3. According to Plaintiff, SSR 82-41 and related authority, *Gaddis*, require that the

transferable skills be specifically identified and that "finding 'transferable work skills' in general does not comply with" this requirement. *Plaintiff's Reply Brief*, ECF No. 16, p. 2. Plaintiff further argues that his testimony regarding his past work is not sufficient to establish transferable skills. *Id*. (citations omitted). Plaintiff goes on to argue that the ALJ's error in this regard is not harmless because, as someone who is of advanced age (*i.e.,* age of 55 or older) during the relevant period, the ALJ's determination that Plaintiff had transferable skills and could therefore perform light exertional work is outcome determinative. *Plaintiff's Brief*, ECF No. 11, p. 20 (citing, *inter alia*, 20 C.F.R. Pt. 404, Subpt. P, App. 2, Rule 202.06).

For his part, the Acting Commissioner contends that this testimony satisfied the ALJ's obligations under SSR 82-41; he argues that the testimony reflects Plaintiff's duties as shipping manager, that his past relevant work was a composite job with three job titles, including stocker receiving supervisor, that the vocational expert expressly testified that Plaintiff acquired transferable skills from his past relevant work as a stocker receiving supervisor, and that Plaintiff could perform the shipping and receiving supervisor component of his past relevant work. *Defendant's Brief*, ECF No. 15, pp. 8–10 (citing, *inter alia*, R. 44–45, 66–68). The Acting Commissioner therefore takes the position that the ALJ appropriately relied on the vocational expert's testimony at step five. *Id*. at 10.

The Acting Commissioner's arguments are not well taken. SSR 82-41 expressly requires the ALJ (or adjudicator) to make fact findings and include them in the written decision, specifically advising the ALJ to identify the acquired work skills:

> 6. <u>Findings of fact in determinations or decisions involving transferability of skills</u>. When the issue of skills and their transferability must be decided, the adjudicator or *ALJ is required to make certain findings of fact and include them in the written decision*. Findings should be supported with appropriate documentation.

> When a finding is made that a claimant has transferable skills, *the acquired work skills must be identified*, and specific occupations to which the acquired work skills are transferable must be cited in the State agency's determination or ALJ's decision.

SSR. 82-41, 1982 WL 31389, at *7 (emphasis added). Notably, in *Gaddis*, the United States Court of Appeals, albeit in a unpublished decision, confirmed that the ALJ had satisfied SSR 82-41 when the ALJ, *inter alia*, identified each of the specific transferable skills that the claimant had acquired from past relevant work. *Gaddis*, 417 F. App'x at 108 ("[T]he ALJ identified transferable skills from Gaddis's past work as a teacher, including working with data, compiling, recording, and preparing test results and grades."). In the present case, although both the ALJ and the vocational referred generally to transferable skills, neither identified the particular skills of the job of stocker, receiving supervisor. R. 25, 67–70.

The Acting Commissioner urges this Court to find that the general references to "transferable skills," coupled with Plaintiff's testimony regarding his duties as shipping manager, sufficiently satisfy the ALJ's obligations under SSR 82-41. *Defendant's Brief*, ECF No. 9, pp. 8–10. Setting aside the fact that the ALJ never relied on Plaintiff's testimony in this regard, the Court cannot say that the ALJ complied with the requirements of SSR 82-41 when he failed to identify the specific transferable skills of the job. R. 25. This is particularly true where the testimony of both the vocational expert and Plaintiff indicate that Plaintiff's past work was a composite job consisting of three job titles, including, *inter alia*, stocker, receiving supervisor,[6]

---

[6] The Dictionary of Occupational Titles describes a "Shipping-and-Receiving Supervisor" as follows:

> Supervises and coordinates activities of workers engaged in verifying and keeping records on incoming and outgoing shipments, and preparing items for shipment: Studies shipping notices, bills of lading, invoices, orders, and other records to determine shipping priorities, work assignments, and shipping methods required to meet shipping and receiving schedules, utilizing knowledge of shipping procedures, routes, and rates. Oversees incoming and outgoing shipping activities

and that Plaintiff performed the relevant job of shipping manager at a heavy exertional level rather than at a light exertional level. R. 43–45, 65–69; *cf. Saafeld v. Colvin*, No. CV 14-1108, 2016 WL 4871161, at *2–3 (E.D. Pa. Sept. 15, 2016) ("[T]hese questions about whether the skills sufficiently overlap demonstrate exactly why the ALJ must identify and assess the skills at issue for the Court to conduct a proper review.").

    Nor can the Court conclude that the ALJ's error in this regard is harmless. As Plaintiff points out, an individual of advanced age (age 55 or older) who is at least a high school graduate capable of only light work would be deemed disabled under the Medical-Vocational Guidelines if skills from past skilled or semiskilled work are not transferable. *See* 20 C.F.R. §§ 404.1563(e) ("Person of advanced age. We consider that at advanced age (age 55 or older), age significantly affects a person's ability to adjust to other work. We have special rules for persons of advanced age and for persons in this category who are closely approaching retirement age (age 60 or older)."), 416.963(e) (same); 20 C.F.R. Pt. 404, Subpt. P, App. 2 § 202.06.

---

    to ensure accuracy, completeness, and condition of shipments. Determines space requirements and position of shipment in boxcars and trucks and lays out position of shipment. Determines routing and legal load limits of trucks, according to established schedules and weight limits of states. Inspects loading operations to ensure compliance with shipping specifications, and seals loaded boxcars and truck doors. Inspects material handling equipment for defects and notifies maintenance personnel or contacts outside service facility for repair. Maintains vehicle maintenance report. Directs movement of shipments from shipping and receiving platform to storage and work areas. Compiles records of unfilled orders. Posts weight and shipping charges. Prepares bills of lading. Performs other duties as described under SUPERVISOR (clerical) Master Title. May assist workers in shipping and receiving activities. May be designated according to function supervised as Receiving Supervisor (clerical); Shipping Supervisor (clerical).

DICOT 222.137-030, Shipping-and-Receiving Supervisor (Jan. 1, 2016).

This Court therefore concludes that remand of the matter for clearer articulation of the specific transferable skills is appropriate.[7] *See* SSR. 82-41, 1982 WL 31389, at *7; *Gaddis*, 417 F. App'x at 108.

## V. CONCLUSION

For these reasons, the Court **REVERSES** the Acting Commissioner's decision and **REMANDS** the matter for further proceedings consistent with this *Opinion and Order*.

The Court will issue a separate Order issuing final judgment pursuant to Sentence 4 of 42 U.S.C. § 405(g).

**IT IS SO ORDERED.**


Date: March 17, 2025                     *s/Norah McCann King*
                                         NORAH McCANN KING
                                         UNITED STATES MAGISTRATE JUDGE

---

[7] Plaintiff asserts a number of other errors in the Commissioner's final decision. Because the Court concludes that the matter must be remanded for further consideration and identification of Plaintiff's specific transferable skills at step five, the Court does not consider those claims.